Arthur H. Aizley (AA-5049)
SEDGWICK, DETERT, MORAN & ARNOLD LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
(212) 422-0202
Facsimile (212) 422-0925
Attorneys for Defendant
CUMIS INSURANCE SOCIETY

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
SUFFOLK FEDERAL CREDIT UNION,

                Plaintiff,

        -against-                Case No. 10-CV-00001 (ADS) (ETB)

CUMIS INSURANCE SOCIETY, INC.,        FILED ELECTRONICALLY

                Defendant.
-----------------------------------------------------------------X

**DEFENDANT CUMIS INSURANCE SOCIETY INC.'S
REPLY IN FURTHER SUPPORT OF ITS MOTION
TO DISMISS OR STAY ON ABSTENTION GROUNDS**

Defendant CUMIS Insurance Society, Inc. ("CUMIS") submits its Reply in Further Support of its Motion to Dismiss or Stay on Abstention Grounds ("Motion to Dismiss or Stay").

## PRELIMINARY STATEMENT

As explained in its Motion to Dismiss or Stay, CUMIS requests that this Court dismiss or stay the complaint filed by plaintiff Suffolk Federal Credit Union ("Suffolk") in this action because a parallel action, which was first-filed by CUMIS, is already pending in the State of Wisconsin. Abstention is appropriate because the state action seeks to efficiently adjudicate the rights and liabilities of multiple credit unions, including Suffolk, all of which were impacted by a single fraudulent scheme and all of which purchased materially identical "form" fidelity bonds from CUMIS, and allowing this action to proceed would condone duplicative litigation and the possibility of inconsistent adjudications.

In its Opposition, Suffolk raises three arguments, each of which, as discussed herein, is without merit. Specifically, Suffolk argues:

(1) that the Wisconsin Court allegedly does not have jurisdiction over Suffolk and the other credit union-defendants – ignoring the fact that a short stay of this action to permit the Wisconsin Court to adjudicate this issue is entirely consistent with *Colorado River;*

(2) that application of the *ColoradoRiver* factors allegedly does not support abstention. If credited, Suffolk's arguments would entirely eliminate the ability of a federal court with a single claimant before it to abstain in favor of a state court that can hear the claims of *all* of the nationwide victims of a *single fraudulent scheme*. As discussed below, this runs counter to the purposes of the *Colorado River* doctrine and is simply not the law;

(3) because Suffolk considers only its own convenience, and does not acknowledge that seeking a single forum to adjudicate a nationwide dispute is legitimate, Suffolk argues that

CUMIS's conduct was inequitable and precludes abstention.  As discussed herein, CUMIS's conduct was logical and appropriate, and Suffolk's unsupported accusations do not provide a basis to deviate from the result compelled by the *Colorado River* analysis.

**ARGUMENT**

I. **Suffolk's Pending Motion To Dismiss The Wisconsin Action Does Not Alter the Abstention Analysis Required By *Colorado River***

By the instant motion, CUMIS requests that this Court "dismiss *or stay*" this action.  CUMIS requested this alternative relief for a reason:  it is routine for a federal court to stay, rather then dismiss, a federal action where it is not yet certain that the state action will fully adjudicate the issues in the concurrent federal action, and the *Colorado River* analysis otherwise warrants abstention.  *See*, *e.g.*, *Lefkowitz v. Bank of New York*, 676 F. Supp. 229, 274 (S.D.N.Y. 2009); *Ulico Cas. Co. v. Coy Mechanical Contracting Co.*, 2007 WL 2265563, at *4 (S.D.N.Y. 2007); *Greenburgh No. 11 Federation of Teachers v. Board of Educ. of Greenburgh Eleven Union*, 2006 WL 4490731 (S.D.N.Y. 2006).  Here, Suffolk does not even attempt to argue that a short stay of this action to permit the Wisconsin Court to adjudicate Suffolk's pending jurisdiction motion – which will be fully briefed by July 14, 2010 –  will in any way prejudice Suffolk.  Instead, Suffolk asks this Court to simply accept on faith that Suffolk's jurisdiction motion is meritorious, or perhaps to substitute its judgment of this state law issue for that of the Wisconsin Court.  It is clear, however, that the evaluation of Suffolk's jurisdictional motion turns on Wisconsin law, and is thus precisely the kind of issue that the federal courts have repeatedly held should be addressed by the state court.  *See, e.g.*, *Travelers Indem. Co. v. Philips Elect. N.A. Corp.*, 2004 WL 193564, at *2 (S.D.N.Y. Feb 3, 2004).  *See also Travelers Indemnity Co. v. Liberty Medical Imaging Associates, P.C.,*  2009 WL 962789, at *9 (E.D.N.Y. March 15, 2009)); *General Star*, 2002 WL 850012 at *10; *American Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 659 (S.D.N.Y. 1997).

Thus, entry of a stay is consistent with – and will advance the purposes of – the *Colorado River* abstention doctrine. Suffolk's attempt to avoid the impact of *Colorado River* on this duplicative action should accordingly be rejected.

## II. Abstention Is Appropriate Pursuant To *Colorado River*

CUMIS's moving memorandum of law demonstrated that abstention is warranted under *Colorado River* and Second Circuit law interpreting and applying *Colorado River*. As discussed below, Suffolk's Opposition misapplies the six *Colorado River* factors. The six *Colorado River* factors, which are discussed in turn below, are:

(1) the assumption of jurisdiction by either court over any res or property;

(2) the inconvenience of the federal forum;

(3) the avoidance of piecemeal litigation;

(4) the order in which jurisdiction was obtained;

(5) whether state or federal law supplies the rule of decision; and

(6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Colorado River*, 424 U.S. at 818, 96 S. Ct. at 1236.

### A. The Assumption Of Jurisdiction By Either Court Over Any Res Or Property

While Suffolk is correct that this action is not a property dispute, abstention has repeatedly been found in other contexts when the balance of the remaining factors so warrant. Moreover, as demonstrated in CUMIS's opening brief, numerous courts within the Second Circuit have recognized that abstention is particularly appropriate in the context of duplicative disputes pending in federal and state court arising from the same insurance policy, as is the case here. *See*, *e.g.*, *Travelers Indem. Co. v. Philips Elect. N.A. Corp.*; *Travelers Indemnity Co. v. Liberty Medical Imaging Associates, P.C.,* at *9; *General Star*, at *10; *American Alliance Ins. Co.* at 659.

B.     **Inconvenience of the Federal Forum**

Placing its own interests above judicial efficiency in the context of litigation arising from a fraudulent scheme with nationwide scope, Suffolks argues that New York is a more convenient forum *for Suffolk* then Wisconsin.  In so arguing, however, Suffolk focuses exclusively on its individual convenience, and simply ignores the fact that it was the victim of a *nationwide scheme* impacting over two dozen credit unions located around the country insured by CUMIS under an *identical form* fidelity bond.   Suffolk fails to acknowledge that there is no single forum that is convenient for each of the implicated credit unions implicated by the Wisconsin Action[1], and simply does not discuss the most convenient forum for this litigation *as a whole*.  If CUMIS prevails on the jurisdictional motions being briefed in the Wisconsin Action, the Wisconsin Court can efficiently adjudicate *all* of the coverage issues arising from a single fraudulent scheme under a single form coverage bond *in a single forum*.  Simply put, Suffolk argues that only its convenience matters, and that the Court must ignore the fact that this litigation arises from a fraud with nationwide consequences.

If Suffolk's narrow interpretation of the convenience prong of the *Colorado River* analysis were correct, the federal courts could never abstain in favor of a single state court when a fraudulent scheme has victims in multiple states.  Suffolks self-centered approach would thus make judicial efficiency impossible to achieve *in the very cases it matters most*.  It is clear that Suffolk's approach is not the law – as discussed below, *Colorado River* explicitly considers the need to avoid piecemeal litigation, a factor which has been repeatedly stressed by courts within the Second Circuit.

C.     **The Avoidance of Piecemeal Litigation**

As explained in CUMIS's opening memorandum of law, the Second Circuit and its District Courts have repeatedly stressed that the need to avoid inefficient and duplicative

---

[1] While Suffolk correctly alleged that certain of the defendants in the Wisconsin Action have reached an agreement in principle with CUMIS, at least six credit union defendants will remain defendants in the Wisconsin Action pending further settlements.  Accordingly, the need to avoid duplicative and piecemeal litigation arising from a single fraudulent scheme remains compelling.

proceedings – and the accompanying risk of inconsistent verdicts – strongly weighs in favor of abstention. *See, e.g., De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989).  In *De Cisneros*, multiple state actions were brought by different plaintiffs against multiple defendants allegedly responsible for a fire. *Id.*  In evaluating abstention, the Second Circuit noted that because the state actions were broader than the parallel federal action and included additional parties, there was a risk of inconsistent verdicts which counseled in favor of abstention. Because the Second Circuit's analysis is particularly on point, we quote at length:

> "The central problem with piecemeal adjudication in this case, as the district court noted, is that a potential exists for "inconsistent and mutually contradictory determinations." Specifically, [the trial judge] feared a scenario under which [plaintiff] would prove [defendant's] liability in federal court-and then be able to use the judgment preclusively in state court-but that the inverse would not be true. That is, if [defendant] were relieved of liability in the federal action, [additional plaintiffs in the state actions] would not be bound by federal judgment because they would not have been parties to it. Thus, [defendant] could face liability in two forums with the risk of inconsistent results, and the same state plaintiffs would be unable to be joined in the pending federal action because their presence would defeat diversity jurisdiction. The district court therefore concluded, and we agree, that these potentially contradictory findings of liability would "cause friction between state and federal courts." *See Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 414 (2d Cir.1986).
>
> In the opposite scenario, where the state courts decide the negligence issues first, there is no such conflict. The state proceedings are more comprehensive than the federal proceedings. Further, as [the federal plaintiff] is a party to the state proceedings, and will have a full opportunity to litigate liability and damages, the state judgment could be given preclusive effect in the federal action.

The Second Circuit's decision in *Arkwright-Boston Mfs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) is equally on point.  There, the Second Circuit noted:

> If the federal court refuses to abstain, it will force defendants to defend this complex litigation on two fronts.  Further, inconsistent disposition of these claims between the two concurrent forums would breed additional litigation on assertions of claim and issue preclusion.  This could burden the parties for years to come . . . As the suits all arise out of the single water main failure, they should be tried in one forum.  Maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort." *Id.* at 211.

Here, just as in *Cisneros* and *Arkwright-Boston*, there is a risk of inconsistent adjudications and duplicative litigation. If the Wisconsin Action is adjudicated first, all of the similarly-situated credit unions, including Suffolk, will be bound by that adjudication. However, if the federal action is adjudicated first, the similarly situated credit union defendants would, depending on this Court's ruling, either attempt to use a favorable judgment against CUMIS to preclude CUMIS from litigating the same coverage issues against them, or argue that they were not bound by an unfavorable judgment by this Court because they were not parties to this action. This is precisely the risk that persuaded the Second Circuit that abstention was warranted in *Cisneros* and *Arkwright-Boston*. District Courts within the Second Circuit have repeatedly articulated the same reasoning of *De Cisneros* and *Arkwright-Boston* in abstaining from hearing insurance coverage actions in favor of a parallel state action. *See, e.g.*, *General Star International Indemnity Ltd. v. The Chase Manhattan Bank*, 2002 WL 850012, at *7 (S.D.N.Y. May 3, 2002) (noting that the presence of additional insurers in the state action created the risk of inconsistent adjudications not preventable by principles or res judicata); *American Alliance Ins. Co.*, 961 F. Supp. at 656 (noting that the risk of piecemeal litigation and inconsistent verdicts posed by the fact that the state action included additional parties.)

In a misplaced effort to distinguish this authority and argue that it is not attempting to multiplying the litigation arising from a single fraudulent scheme and that inconsistent adjudications are not possible, Suffolk recites a laundry list of alleged differences between the various credit unions. Significantly, however, Suffolk does not deny that *all* of the 26 credit unions named as defendants in the Wisconsin Action were: (1) defrauded by the very same mortgage servicing company; and (2) insured by the CUMIS *under a standard "form" fidelity bond*. Moreover, Suffolk seeks insurance coverage under two specific coverage grants provided by the fidelity bond, the "Employee or Director Dishonesty" coverage, and the "Forgery or Alteration" coverage. *See*, Suffolk's Complaint, at ¶50, Ex. A. to April 21, 2010 Aizley Declaration in Support of Motion to Dismiss or Stay (hereafter Aizley Dec., at Ex. [ ]). These are **the very same and only two coverages raised in the Complaint in the Wisconsin Action**.

Aizley Dec., at Ex. B., ¶¶ 55-58.  Moreover, Suffolk's Complaint specifically highlights a coverage issue which is common to all of the defrauded credit unions in its Complaint – whether a mortgage servicing company comitting fraud of the type alleged falls within the Bond's definition of a "servicing contractor" for purposes of such conduct.  Aizley Dec., at Ex. A, ¶ 44.  The meaning of these coverage grants and definitions is at issue with respect to *all* of the credit unions' claims.

While Suffolk and the other credit unions remaining as defendants in the Wisconsin Action are free to argue that individual facts and circumstances should impact the coverage determination – which CUMIS contests – a court evaluating such a claim will necessarily first need to decide what the language of the form bond issued to all of the credit unions – including the two coverages alleged in Suffolk's Complaint and the definition of a "serving contractor" – actually means.  Thus, the alleged differences between the credit unions which Suffolk stresses do not alter the basic fact that the coverage issues underlying all of these claims are entirely common.  The "avoidance of piecemeal litigation" prong of the *Colorado River* analysis therefore strongly favors abstention.

D.      **The Order In Which Jurisdiction Was Obtained**

Suffolk does not dispute the fact that the Wisconsin Action was first-filed.  Although Suffolk is correct that some courts have compared the progress of the federal and state actions rather then mechanically examining the filing dates of the two actions, here this analysis is not probative because both actions are in their infancy.  Although Suffolk tries to make it appear as though this action has materially advanced, the first and only conference in this case, a Rule 26(f) conference, was held two days ago, on May 18, 2010.  At that conference, Magistrate Judge Boyle set a close of fact discovery in this action of December 31, 2010.  No discovery has taken place to date apart from initial disclosures, and Suffolk's accompanying reproduction of its proof of loss, first produced to CUMIS long ago outside the context of this litigation.  Thus, contrary to Suffolk's contention, the comparative progress of the federal and state actions is not a

meaningful factor in this case.

### E. Whether State Or Federal Law Supplies The Rule Of Decision

Suffolk argues that New York law will govern the interpretation of the Bond as to Suffolk, and that this Court is more familiar with New York law then the Wisconsin Court. Suffolk's argument entirely ignores the fact that Suffolk's claims arise from a nationwide scheme impacting credit unions across the country. If Suffolk's argument regarding this factor were credited, a federal court in the home state of one alleged victim of a nationwide scheme could *never* abstain to a single state forum with all of the alleged victims of a nationwide scheme before it. Suffolk's attempt to interpret *Colorado River* in a manner which effectively prevents avoiding piecemeal litigation in the very class of cases where this concern is the most significant – cases with a significant number of victims located across the nation – should be rejected.

### F. Whether The State Court Proceeding Will Adequately Protect Suffolk's Rights

Unable to refute the basic fact that the very same insurance coverage dispute is at issue here and in the Wisconsin Action, Suffolks makes two arguments which do not withstand analysis: (1) that there is no jurisdiction over Suffolk in the Wisconsin Action; and (2) that the Wisconsin Action is allegedly proceeding slowly. First, as discussed above, Suffolk's jurisdiction argument is not relevant to whether this action should be stayed for a brief period pending the Wisconsin Court's decision on Suffolk's motion. Second, the Wisconsin Action is in fact proceeding at a reasoned pace. Suffolk, not CUMIS, chose to file a jurisdictional challenge in that action, and cannot complain that the Wisconsin Court agreed that it would be appropriate to resolve this issue – which will be fully briefed by July 14, 2010 – prior to further proceedings. Moreover, Suffolk reliance on the delay between the filing and service of the

Wisconsin action is logically unrelated to whether the Wisconsin Action is currently – now that issue has been joined – proceeding at an appropriate pace.

### III. Suffolk's Argument That The Wisconsin Action's Filing Was "Vexatious and Reactive" Is Factually Baseless

Suffolk terms CUMIS's filing of the Wisconsin Action "forum shopping" and argues that this should preclude abstention. However, Suffolk's use of the term "forum shopping" is a classic case of the "pot calling the kettle black." CUMIS, facing as many as 26 potential separate lawsuits, acted logically and appropriately by attempting to secure a single forum to efficiently resolve the coverage issues vis-à-vis all impacted credit unions to which CUMIS issued the same identical form fidelity bond. Suffolk has not alleged that there was any other single forum that Suffolk could have chosen. Suffolk, by contrast, rejected an efficient adjudication of the coverage issues arising from a single fraudulent scheme in a single forum and instead chose to multiply this litigation by filing this litigation in its home forum. It is thus Suffolk, not CUMIS, which is guilty of forum shopping.

Suffolk conclusorily alleges that CUMIS "abused the settlement process" by filing the Wisconsin Action while settlement talks with Suffolk were underway. Suffolk's claim is puzzling, because it is routine for parties to file litigation when they believe that negotiations may be breaking down. Here, as noted in CUMIS's opening memorandum and not disputed by Suffolk, CUMIS had been threatened with multiple home-town filings by several credit unions, and acted logically to secure a single forum where this litigation could efficiently be heard. Suffolk thus, in essence, argues this Court should not apply a legal doctrine designed prevent piecemeal adjudication (*i.e.*, the *Colorado River* doctrine) because CUMIS attempted to prevent piecemeal adjudication by filing with Wisconsin Action. Suffolk's argument is both illogical and without legal merit, and should be rejected.

### IV. Educational Systems Federal Credit Union v. CUMIS Was Wrongly Decided

By supplemental submission, Suffolk submitted the decision from the District of Maryland rejecting an abstention motion filed by CUMIS in a case filed by Educational Systems

Federal Credit Union ("Educational"), one of the credit unions named in the Wisconsin action. While the Educational opinion relied on Fourth Circuit law which is distinguishable from Second Circuit abstention law, more imporantly, the opinion is simply wrongly decided.  The *Educational* opinion inexplicably held that the desirability of avoiding piecemeal litigation was not implicated because Educational's breach of contract claim "will require examining the bond itself" – incorrectly implying that the bond is not at issue in the Wisconsin declaratory judgment action.  *Educational Systems Federal Credit Union v. Cumis*, No. 8:09-cv-03217 at 21 (May 12, 2010).  The Maryland Court apparently failed to understand that Educational's breach of contract claim – like Suffolk's breach of contract claim here – calls for interpretation of the very same provisions of the very same bond at issue in the declaratory judgment action filed in Wisconsin. Accordingly, CUMIS respectfully submits that the Educational decision is incorrectly decided and should be rejected.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, CUMIS requests that the Court stay or dismiss Suffolk's Complaint pursuant to the *Colorado River* abstention doctrine, or at a minimum, stay this action until the Wisconsin court determines whether it will exercise jurisdiction over Suffolk.

Date:  May 20, 2010

/s/  Arthur H. Aizley
Arthur H. Aizley
Bar Roll Number 516109
SEDGWICK, DETERT, MORAN & ARNOLD, LLP
Attorneys for Defendant
CUMIS INSURANCE SOCIETY, INC.
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
Email:    arthur.aizley@sdma.com

OF COUNSEL:

        Michael R. Davisson  (Bar No. 083278)
        SEDGWICK, DETERT, MORAN & ARNOLD LLP
        801 S. Figueroa Street, 19th Floor
        Los Angeles, CA 90017
        Email: michael.davisson@sdma.com

        Attorneys for CUMIS Insurance Society, Inc