FRANKFURT KURNIT KLEIN & SELZ PC

488 Madison Avenue
New York, New York 10022
Telephone: (212) 980-0120
Facsimile: (212) 593-9175

Patrick J. Boyle
Direct dial: (212) 826-5582
e-mail: pboyle@fkks.com

February 25, 2011

**BY ECF**
The Honorable Magistrate Judge E. Thomas Boyle
United States District Court
One Hundred Federal Plaza
Central Islip, New York 11722

    Re: *Suffolk Federal Credit Union v. CUMIS Insurance Society, Inc.*
          10-CV-00001 (E.D.N.Y.) (ADS-ETB)

Dear Judge Boyle:

    We write on behalf of our client, plaintiff Suffolk Federal Credit Union ("Suffolk"), and in response to the February 22, 2011 letter motion by defendant CUMIS Insurance Society, Inc. ("CUMIS") requesting an extension of the fact discovery deadline from April 30, 2011 to July 30, 2011. Instead of sending a joint request for a seventy-five day extension of the deadline, which Suffolk consented to, CUMIS filed a motion that mischaracterizes many aspects of the discovery that has occurred in this case. Thus, Suffolk feels compelled to write this response and to request a court conference to address CUMIS's attempt to portray Suffolk as non-compliant with its discovery obligations, in an attempt to shift the burden of CUMIS's document review upon Suffolk.

    We trust that the Court is well aware of the nature of Suffolk's claim in this action from prior conferences. In brief, Suffolk seeks coverage under its fidelity bond for the fraud perpetrated by Michael J. McGrath, Jr., the principal of Suffolk's former mortgage servicer, CU National Mortgage, LLC ("CU National"). Mr. McGrath has been convicted and was sentenced yesterday by the United States District Court for the District of New Jersey to fourteen years in federal prison for having defrauded nearly 30 credit unions along the Eastern seaboard out of $136 million by selling to Fannie Mae loans that were to be serviced for those credit unions and pocketing the proceeds. McGrath perpetrated the fraud, and caused Suffolk's losses, by among other things: signing mortgage assignments and allonges to the buyer, Fannie Mae, as "AVP" of Suffolk without Suffolk's knowledge or authorization; forging the names of Suffolk's borrowers on notes and mortgages; sending Suffolk false trial balances indicating that sold loans were still in Suffolk's portfolio; and remitting monthly mortgage payments to Suffolk on those loans, so that Suffolk would not discover the fraud. The scheme continued for over five years because McGrath sent principal and interest payments for these mortgages to the credit unions, as if these mortgages were still in their portfolios. Coverage under the bond is clear since the bond expressly covers losses caused by the infidelity of a "servicing contractor," but CUMIS has nonetheless sought a great deal of discovery concerning what Suffolk knew or should have known about CU National and McGrath. While this discovery is irrelevant to the coverage determination, Suffolk agreed to produce a great number of documents related to communications with its mortgage servicer and loans untouched by the fraud in order to avoid unnecessary motion practice.

FRANKFURT KURNIT KLEIN & SELZ pc

Hon. E. Thomas Boyle
February 25, 2011
Page 2

With respect to Suffolk's document production, some perspective is in order. Suffolk produced all of the documents directly related to the fraudulent sale of 189 of its loans with its initial disclosures on May 11, 2010. This production supplemented a prior production of highly-relevant documents that accompanied Suffolk's Proof of Loss dated January 1, 2010. CUMIS now complains that Suffolk's production in response to CUMIS's discovery requests seeking documents that do not directly concern the 189 loans, and in particular Suffolk's production of electronically-stored information ("ESI"), is deficient. But, as shown below, counsel for Suffolk and CUMIS were in close contact regarding the nature and magnitude of Suffolk's document production, and Suffolk's counsel *sought* and *obtained* approval from CUMIS's counsel concerning the manner in which Suffolk would produce its ESI to CUMIS.

On September 15, 2010, Suffolk's counsel sent CUMIS's counsel a proposal for the identification and collection of ESI. (*See* Letter dated September 15, 2010, attached hereto as Exhibit A.) Suffolk proposed a list of custodians and a set of keyword search terms, and proposed to review the "hits" from those custodians' ESI for privilege and responsiveness and produce the responsive, non-privileged documents to CUMIS in tiff format. *Id.* CUMIS agreed to the search terms and custodian lists after Suffolk added additional keywords to the search at CUMIS's request. (*See* E-mail Exchange, attached hereto as Exhibit B.) Suffolk then collected its ESI and ran the agreed searches, which yielded a large volume of documents to be reviewed. In order to speed up the process, Suffolk proposed that the parties enter into a clawback agreement, pursuant to which Suffolk would produce to CUMIS the "hits" minus those documents that were presumptively privileged in fully searchable native form. (*See* January 13, 2011 letter, attached hereto as Exhibit C.) CUMIS agreed to this proposal, provided that Suffolk would not later seek to claw back documents on relevance grounds, and explicitly acknowledged that Suffolk would produce the documents without human relevance review. (*See* E-mail exchange, attached hereto as Exhibit D.) Suffolk has produced ESI for the vast majority of its custodians (over 200,000 documents) pursuant to the clawback agreement.

Now, in late February, CUMIS is faced with a large volume of documents, but not by any means unmanageable in this electronic discovery era, especially for a case seeking $43 million plus interest. The produced documents met CUMIS's own search terms for the agreed-upon custodians. Moreover, pursuant to the parties' agreement, these documents were produced in native format and are thus fully searchable and can be narrowed however CUMIS desires. Notwithstanding the foregoing, CUMIS now wishes to revisit the agreement with respect to Suffolk's production and improperly shift the burden of sorting this data onto *Suffolk*.

The effort to shift the burden to Suffolk began with CUMIS's Second Set of Interrogatories, as to which Suffolk intends to make a motion for a protective order unless a resolution of that issue can be reached though a court conference, either in conjunction with this discovery extension request or otherwise. (A copy of CUMIS's Second Set of Interrogatories to Suffolk, dated February 9, 2011, is attached for the Court's reference as Exhibit E.) It is one

FRANKFURT KURNIT KLEIN & SELZ PC

Hon. E. Thomas Boyle
February 25, 2011
Page 3

thing for Suffolk to produce documents to CUMIS, as agreed by CUMIS without Suffolk reviewing them, and quite another to be asked by CUMIS to compile data from the documents or to point out for CUMIS where in these documents various things can be found. In this regard, Suffolk objects on both relevance and burden grounds and because of Suffolk's full compliance with Fed. R. Civ. P. 33(d)(2) (having given CUMIS unfettered access to Suffolk's business records). As mentioned above, it was expressly agreed that Suffolk's broad production on these issues would be without human review. Counsel for Suffolk complained in this respect to Mr. Aizley recently, and although we were told that he "hears" us with respect to the complaint that the Second Set of Interrogatories is inconsistent with the agreement, there was no satisfactory resolution, or, for that matter, response.

For its part, Suffolk has taken depositions and is capable of completing discovery within the current deadline. Suffolk agreed to consent to CUMIS's request an extension even though the facts did not militate strongly in favor of additional time for discovery. Nevertheless, since Suffolk had missed by about a month the December 31, 2010 target for Suffolk's remaining document production and given the large number of additional documents that were produced, Suffolk has no objection to the Court granting CUMIS's request for an extension of time to complete discovery. That is, for *CUMIS* to review the documents it sought, not for Suffolk to bear the expense to review and compile the information CUMIS seeks.

While Suffolk did not wish to engage in a letter writing exchange such as this, Suffolk was compelled to correct the record with respect to the status of discovery and the wild exaggerations regarding missed deadlines and failures to respond. CUMIS's version of the facts seems designed more to help CUMIS meet the high standard for the granting of extensions than to accurately relate the status of transparent and cooperative discovery. As mentioned above, when Suffolk granted the request (two weeks ago) it believed this would be a joint application to the Court (albeit for CUMIS's benefit to review the documents) and not as a one-sided request designed to lay the groundwork for CUMIS to allocate its document review work to Suffolk.

For all the reasons expressed above, Suffolk requests a court conference to address the extension request and the current status of discovery.

Respectfully submitted,

Patrick J. Boyle

cc: Arthur Aizley, Esq.
Michael Davisson, Esq.
Valerie Rojas, Esq.