**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SUFFOLK FEDERAL CREDIT UNION,

              Plaintiff,

       -against-

CUMIS INSURANCE SOCIETY, INC.,

              Defendant.
------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-CV-0001 (ADS)(GRB)

**APPEARANCES:**

**Frankfurt Kurnit Klein & Selz, P.C.**
*Attorneys for the Plaintiff*
488 Madison Avenue, 9th Floor
New York, NY 10022
   By: Amelia Katherine Seewann, Esq.
      Jeremy Seth Goldman, Esq.
      Jessie F. Beeber, Esq.
      Patrick J. Boyle, Esq., Of Counsel

**Sedgwick Detert Moran & Arnold LLP**
*Attorneys for the Defendant*
125 Broad Street
New York, NY 10004
   By: Arthur Aizley, Esq.
      Brian Maurice Oubre, Esq., Of Counsel

**SPATT, District Judge.**

This is an insurance coverage action in which the Plaintiff Suffolk Federal Credit Union

("Suffolk") alleges that the Defendant CUMIS Insurance Society, Inc. ("CUMIS") breached the

terms of the parties' fidelity bond (the "Bond") by refusing to indemnify Suffolk for losses

arising from a fraud committed by Suffolk's loan servicer, CU National Mortgage, LLC ("CU

National").

On December 15, 2012, the Court issued an Order in which it, in relevant part (1) denied

Suffolk's motions for partial summary judgment; and (2) denied in part and granted in part

CUMIS's motions for summary judgment (the "December 15, 2012 Order"). In this regard, among other findings, the Court found as a matter of law that Suffolk was not entitled to coverage under Coverage A, Employee or Director Dishonesty, for acts committed by CU National outside the scope of the three enumerated traditional loan service functions listed under the Bond's definition of "servicing contractor"; and (2) Suffolk was not entitled to recover attorneys' fees. Further, the Court found, in relevant part, that triable issues of fact remained as to whether Suffolk's losses resulted directly from the fraudulent acts committed by CU National while performing its servicing functions.

The Plaintiff now moves for reconsideration of the December 15, 2012 Order pursuant to Local Civil Rule 6.3 and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 59(e) and 60(b). For the reasons set forth below, the Court denies in part and grants in part Suffolk's motion.

## I. DISCUSSION

The Court assumes the parties' familiarity with the background of this case and the December 15, 2012 Order that Suffolk now challenges. See Suffolk Federal Credit Union v. CUMIS Ins. Soc., Inc., 910 F. Supp. 2d 446 (E.D.N.Y. 2012) (Spatt, J.). Accordingly, the Court need not repeat those facts here and proceeds to analyze Suffolk's motion for reconsideration.

### A. Legal Standard

In this case, the Plaintiff relies on Fed. R. Civ. P. 59(e) and 60(b) to seek its request for reconsideration. Fed. R. Civ. P. 59(e) governs motions to "alter or amend a judgment." Courts have recognized three major grounds justifying reconsideration pursuant to Fed. R. Civ. P. 59(e): "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992) (citations and internal quotation marks omitted). "The

standard for granting such a motion is strict, and reconsideration will generally be denied unless

the moving party can point to controlling decisions or data that the court overlooked—matters, in

other words, that might reasonably be expected to alter the conclusion reached by the court."

Rafter v.. Liddle, No. 07–2282–cv, 2008 WL 3842709, at *1 (2d Cir. Aug. 13, 2008) (quoting

Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995)).

Of importance, a motion for reconsideration is not an opportunity for litigants to reargue

their previous positions or present new or alternative theories that they failed to set forth in

connection with the underlying motion.  See Trans-Pro Logistic Inc. v. Coby Elecs. Corp., No.

05 Civ. 1759, 2010 WL 4065603, at *1 (E.D.N.Y. Oct. 15, 2010) (citing Ferrand v. Credit

Lyonnais, 292 F. Supp. 2d 518, 520 (S.D.N.Y. 2003)); see also Zdanok v. Glidden Co., Durkee

Famous Foods Div., 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for

the court's decision, they should neither be required, nor without good reason permitted, to battle

for it again.").  Indeed, a motion for reconsideration should be "narrowly construed and strictly

applied so as to avoid repetitive arguments on issues that have already been considered fully by

the court" and is considered an "extraordinary remedy to be employed sparingly in the interests

of finality and conservation of scarce judicial resources." Trans-Pro Logistic Inc., 2010 WL

4065603, at *1 (internal quotation marks omitted).  Ultimately, the decision as to whether to

grant a motion for reconsideration rests within the sound discretion of the district court.  Kapsis

v. Bloom, No. 08 Civ. 3092, 2009 WL 414001, at *1 (E.D.N.Y. Feb. 17, 2009).

By contrast, as an alternative to Fed. R. Civ. P. 59(e), Fed R. Civ. P. 60(b) permits a

court, in its discretion, to rescind or amend a final judgment or order in limited circumstances.  In

this regard, Fed. R. Civ. P. 60(b) provides that "[o]n motion and upon such terms as are just, the

court may relieve a party or a party's legal representative from final judgment, order, or

proceeding." Rule 60(b) provides the following grounds for relief from a judgment:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence
> could not have been discovered in time to move for a new trial
> under Rule 59(b);
> (3) fraud (whether heretofore denominated intrinsic or
> extrinsic), misrepresentation, or other misconduct of an adverse
> party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged,
> or a prior judgment upon which it is based has been reversed or
> otherwise vacated, or it is no longer equitable that the judgment
> should have prospective application; or
> (6) any other reason justifying relief from the operation of
> the judgment.

Fed. R. Civ. P. 60(b). See Jones v. UNUM Life Ins. Co. of America, 223 F.3d 130, 136 (2d Cir.

2000).

Relief under Rule 60(b) is "invoked only upon a showing of exceptional circumstances."

Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir.1986). "To grant a Rule 60(b) motion, the court must

find that the evidence in support of the motion is highly convincing, that the movant has shown

good cause for the failure to act sooner, and that no undue hardship is imposed on the other

parties as a result." Figueroa v. Walsh, No. 00–CV–1160, 2008 WL 1945350, *4 (E.D.N.Y.

May 1, 2008) (citing Kotlicky v. U.S. Fidelity & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987)). As

with motions for reconsideration, the determination of a Rule 60(b) motion is left to "the sound

discretion of the district judge." Wang v. State Univ. of New York Health Sciences Ctr. at Stony

Brook, No. 02–CV–584, 2008 WL 4415266, *2 (E.D.N.Y. Sept. 24, 2008).

**B. As to the Plaintiff's Motion to Reconsider the Court's December 15, 2012 Order**

In its present motion, Suffolk challenges three rulings from the Court's December 15,

2012 Order. (Pl. Mem., pg. 1.) First, the Suffolk seeks reconsideration of the Court's holding

that CU National did not commit the fraud in its capacity as a loan servicer and asks to be

permitted to present evidence on the issue of whether CU National committed dishonest acts

while performing enumerated servicing functions.   Second, Suffolk contends that the Court

should reconsider its finding that triable issues of material fact exist with respect to (1) CU

National's intent when it committed acts of concealment while performing its servicing functions

and (2) Suffolk's reliance on CU Nationals' fraudulent reports.   Lastly, Suffolk asks that the

Court reconsider its decision that Suffolk is not entitled to attorneys' fees in the event it prevails

on the merits of its claims.   However, the Court finds that, with the exception of one narrow

issue, Suffolk has failed to show that it is entitled to reconsideration.

With respect to its first argument, Suffolk contends that it "does not seek to disturb" the

Court's holding that "no coverage is available for any of Suffolk's losses resulting directly from

CU National's fraudulent conduct in selling the subject loans . . . ." (Pl. Mem., pg. 3.)  Instead,

Suffolk argues that the "Court may have misapprehended the mechanism by which CU National

was able to commit an ongoing fraud, and the holding of the Sperry case." (Pl. Mem., pg. 3.)

Suffolk points to no intervening change of controlling law; new evidence; clear error or manifest

injustice to justify reconsideration under Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3.   It also

does not indicate that any of the grounds provided under Fed. R. Civ. P. 60(b) are present.

Rather, it appears to the Court that Suffolk merely reargues its previous position with regard to

the case of Sperry Assocs. Fed. Credit Union v. CUMIS Ins. Soc'y, inc., Civ. No. 10–00029

(DRD), 2012 WL 693046 (D.N.J. Mar. 1, 2012).

In the December 15, 2012 decision, the Court carefully analyzed the Sperry case and

explained why it was not persuaded by its holding:

> [T]his Court must respectfully disagree with the Sperry
> Court's holding, since it finds that the language of the Bond

unambiguously excludes coverage for those dishonest acts committed by servicing contractors outside the scope of the enumerated duties listed under the definition of "servicing contractor." The definition of "servicing contractor" specifically states that a third party vendor is a servicing contractor under the Bond "only while performing" the services of (1) "collect[ing] and record[ing] payments on real estate mortgage or home improvement loans"; (2) "establish[ing] tax or insurance escrow accounts on real estate mortgage or home improvement loans, made, held or assigned by [Suffolk]"; or (3) "manag[ing] real property owned by [Suffolk] or under [Suffolk's] supervision and control." (Dkt. No. 83–1, pg. 51–52.) Despite Suffolk's arguments and the Sperry Court's holding, this Court declines to ignore the plain and ordinary meaning of the Bond's "only while performing" language, as it was clearly designed to address those situations where a third party vendor performs both traditional loan servicing functions and non-servicing functions so as to limit coverage to only those fraudulent acts committed by the vendor in its loan servicing role. See Andy Warhol Found. For the Visual Arts, Inc. v. Fed. Ins. Co., 189 F.3d 208, 215 (2d Cir.1999) ("[A]n insurance policy, like any contract, must be construed to effectuate the intent of the parties as derived from the plain meanings of the policy's terms.").

Suffolk Fed. Credit Union, 910 F. Supp. 2d at 457. In other words, the Court rejected the Sperry Court's suggestion that so long as a third party vendor used its role as a servicing contractor to aid it in committing the fraud, coverage would be available. Instead, the Court found that before coverage could be determined, it was first necessary to evaluate (1) whether the dishonest acts that were committed within the scope of performing the enumerated duties directly caused the insured's loss and (2) whether the third party vendor, when committing the dishonest acts within the scope of performing the enumerated duties, had the intent to cause the loss or obtain an improper financial benefit. As such, because the Sperry decision was already amply discussed by the Court in the December 15, 2012 Order, the Court denies Suffolk's motion for reconsideration in this respect and the Court declines to reevaluate the Sperry decision. See R.B. ex rel. A.B. v. Dep't of Educ. Of City of New York, No. 10 Civ. 6684(RJS), 2012 WL 2588888,

6

at *3–4 (S.D.N.Y. July 2, 2012) <u>Trans-Pro Logistics Inc.</u>, 2010 WL 4065603, at *2; <u>Minkina v.</u>

<u>Ashcroft</u>, No. 01 CV 0511 SJ, 2004 WL 1447947, at *1 (E.D.N.Y. June 25, 2004).

Further, Suffolk contends that it "should be permitted to present to the jury evidence that

CU National's traditional loan servicing functions allowed the fraud to continue to be

committed." (Pl. Mem., pg. 6.) However, the Court reiterates that the language of the Bond

requires (1) that the "loss result[s] directly from dishonest acts committed by an 'employee' or

'director,' acting alone or in collusion with others" and (2) that, in relevant part the "dishonest

acts [ ] be committed by the "employee" or "director" with the intent to [ ] [c]ause [Suffolk] to

sustain such loss." (Dkt. No. 83-1, pg. 25.) Therefore, the relevant question is not whether the

traditional loan servicing functions allowed the fraud to continue to be committed, but (1)

whether Suffolk's loss resulted directly from the dishonest acts committed by CU National in its

capacity as a loan servicer and (2) whether CU National's intent when it committed those

dishonest acts was to cause Suffolk to sustain the loss. Accordingly, the Court finds no reason to

disturb its previous holding.

Suffolk also contends that the Court overlooked key facts demonstrating that CU

National intended to cause Suffolk's losses and that Suffolk relied on CU National's

concealment in deciding to continue to retain CU National. In this regard, Suffolk first argues

that "no reasonable juror could conclude that CU National lacked the requisite intent to benefit it

at the expense of Suffolk" and that this Court previously "accepted as undisputed that McGrath

[the controlling shareholder of the company that owned CU National] intended to cause Suffolk

to sustain a loss, and to sue the proceeds for himself." (Pl. Mem., 7–8.) However, in the

Court's view, Suffolk misunderstands the issue, which the December 15, 2012 Order

highlighted.

Indeed, the important issue is not McGrath's or CU National's intent with respect to the entire fraud.  Instead, the Court must look at whether they had the requisite intent to cause Suffolk to sustain a loss or to obtain a financial benefit for themselves or another when they committed the dishonest acts of concealment while performing their loan servicing duties.  As CUMIS points out, it is possible that in committing the dishonest acts of concealment, CU National and McGrath were, for example, merely trying to avoid getting caught as opposed to trying to cause Suffolk to sustain a loss or to obtain a financial benefit.  (Def. Opp., pg. 18–19.)

Second, Suffolk argues that the Court overlooked evidence that Suffolk relied upon CU National's monthly pending sale reports and its remittance of payments in continuing to retain CU National as its servicer.  In making this argument, though, Suffolk takes portions of the Court's December 15, 2012 Order out of context.   For example, Suffolk suggests that the Court erred in finding that "Suffolk neither recorded nor kept track of those loans it authorized for sale," because Suffolk kept a log of the loans it had authorized for sale.  (Pl. Mem. pg. 11–12.)  However, while the Court may not have acknowledged that Suffolk kept a log of the loans it had authorized for sale, this is irrelevant to the question of reliance.  Instead, the question of reliance turns in part on whether or not Suffolk relied on the dishonest acts of concealment committed by CU National and McGrath while acting in their servicer capacity, such as the generating of fraudulent monthly pending sales reports.  If Suffolk did not rely on those fraudulent reports, then CU National and McGrath's acts of concealment were arguably irrelevant to Suffolk's decision to continue retaining CU National.  Whether or not Suffolk also kept a log of the loans does nothing to resolve the reliance question.

Furthermore, when the Court made the challenged finding, the Court did so in the context of describing the relationship between Suffolk and CU National:

> Suffolk neither recorded nor kept track of those loans it authorized for sale. Rather, Suffolk relied upon CU National to monitor those loans that Suffolk wished to sell. To that end, CU National prepared monthly pending sales reports, which listed the loans that U.S. Mortgage would be selling on behalf of Suffolk.

Suffolk Federal Credit Union, 910 F. Supp. 2d at 451. If anything, Suffolk should view this description as favorable to its position, as it suggests that Suffolk relied on CU National to monitor those loans that Suffolk wished to sell. Thus, if at trial Suffolk can establish that it was reviewing the fraudulent reports that were generated by CU National in the course of monitoring those loans, it will lend support to Suffolk's argument that it continued to retain CU National due to the acts of concealment committed by CU National during the course of performing its servicing functions. Conversely, in the Court's view, Suffolk's assertion that it kept its own log implies that Suffolk was not solely depending on CU National and, as such, it would appear that CU National's acts of concealment may have had less bearing on CU National's decision to continue retaining CU National.

Moreover, Suffolk alleges that "the Court accepted [CUMIS's] assertion that 'Suffolk did not review either the monthly trial balance reports or the monthly pending sale reports.'" (Pl. Mem., pg. 9.) Again, this statement by Suffolk takes the Court out of context, for the Court actually stated the following:

> According to Suffolk, it closely monitored monthly principal and interest payments and would often notify CU National if payments were received late. However, CUMIS contends that Suffolk did not review either the monthly trial balance reports or the monthly pending sales reports.

Id. at 451. As such, the Court did not accept CUMIS's assertion but was merely presenting both positions by Suffolk and CUMIS. In this way, the Court identified the existence of a triable issue of material fact with respect to this issue.

Suffolk further argues that the Court overlooked evidence that "Suffolk relied upon CU National's monthly remittance of principal and interest payments in continuing to retain CU National." (Pl. Mem, pg. 9.)  However, as stated above, in the December 15, 2012 Order, the Court did, in fact, recognize that "[a]ccording to Suffolk, it closely monitored monthly principal and interest payments and would often notify CU National if payments were received late." Suffolk Federal Credit Union, 910 F. Supp. 2d at 451.  At the same time, the Court also noted that "CU National was often late in providing Suffolk with monthly remittances and monthly service reports, thus creating problems for Suffolk when it tried to properly close it books each month. . . . [T]hese delays lasted between 30 days to up to one year." Id.  Furthermore, when "Suffolk's Executive Vice President John Klag tried to investigate [the] delays in remitting the proceeds for the authorized sales, McGrath complained and Suffolk subsequently fired Klag." Id. at 451–52.  Considering the significant delays and Suffolk's apparent decision to not conduct an investigation, the Court finds that questions of fact remain as to the extent Suffolk actually relied on CU National's remittance of payments, or potential lack of payment, when deciding to continue to retain CU National.

However, the Court does find that issues of fact remain as to whether Suffolk relied on the remittance of payments in addition to the fraudulent reports created by CU National. Therefore, the Court grants Suffolk's narrow request that the issue of reliance, as stated in the December 15, 2012 Order, see id. at 459, be modified to state as follows: "whether and to what extent Suffolk relied on the fraudulent reports generated by CU National and CU National's alleged remittance of principal and interest payments on the stolen loans in continuing to retain CU National."  Therefore, both Suffolk and CUMIS will able to present evidence at the trial not

only about the fraudulent reports, but also about CU National's remittance of payment, including

whether CU National received all payments on the loans and the nature and extent of delays.

Lastly, Suffolk asks the Court to revisit its argument that it is entitled to attorneys' fees in

the event that it prevails on the merits of this case.  Suffolk contends that while the Court

correctly stated the legal standard, it application of the legal standard was incorrect.  In this

regard, Suffolk claims it is in a defensive posture because it filed the present lawsuit in response

to CUMIS having filed an action in Wisconsin against Suffolk and other credit unions seeking a

declaratory judgment that it was not obligated to cover losses in connection with the CU

National fraud.  (Pl. Mem., 11–12.)

However, as the Court concluded in the December 15, 2012 Order, "Suffolk initiated this

action against CUMIS and thus, CUMIS, not Suffolk, is cast in a defensive posture."  Suffolk

Federal Credit Union, 910 F. Supp. 2d at 462.  The previous action brought by CUMIS in

Wisconsin does not change this fact.  Indeed, under New York law, the insured must be "cast in

a defensive posture."  U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y.3d 592, 597–

598, 822 N.E.2d 777, 779–80, 789 N.Y.S.2d 470, 472–73 (2004); Mighty Midgets, Inc. v.

Centennial Ins. Co., 47 N.Y.2d 12, 21, 389 N.E.2d 1080, 1085, 416 N.Y.S.2d 559, 564 (1979).

While Suffolk may have been in a cast in a defensive posture in the Wisconsin case, the instant

lawsuit is wholly separate from that action.

Suffolk's reliance on Am. Motorists Ins. Co. v. GTE Corp., Nos. 99CV512 (RCC),

99CV2214 (RCC), 2000 WL 1459813 (S.D.N.Y. Sept. 29 2000), and City of New York v.

Zurich-Am. Ins. Group, 27 A.D.3d 609, 911 N.Y.S.2d 773 (2d Dep't 2006), is misplaced.  In

Am. Motorists, the insurer filed a declaratory judgment action which was later consolidated with

the insured's declaratory judgment action because the cases were "'mirror images' of one

another." 2000 WL 1459813, at *1 n.2. Thus, although the insured did initiate a second action, because that action was consolidated with the insurer's action, it still remained a defendant. Accordingly, having dismissed all of the insurer's claims against the insured, the Am. Motorists court awarded the insured attorneys' fees. Id. at *6.

In contrast, the instant case has not been consolidated with the Wisconsin case. As such, although the Wisconsin case might have influenced Suffolk's decision to bring this lawsuit, the fact remains that Suffolk is not defending itself against CUMIS in any respect in the present case. Rather, only CUMIS has been cast in a defensive posture, as Suffolk asserts claims that CUMIS breached the terms of the parties' contract by refusing to indemnify Suffolk for losses arising from the CU National fraud.

Similarly, in Zurich-Am., after the court granted summary judgment in favor of the insured, the insurer "moved for leave to amend its answer and for summary judgment in this action on the ground that the [insured's] noncompliance in the underlying action amounted to a breach of its continuing duty to act in good faith, and therefore relieved [the insurer] of the duty to defend and indemnify [the insured." 27 AD.3d at 610. The insured then "cross-moved to recover attorney's fees expended *defending itself against [the insurer's] motions*." Id. (emphasis added). The Zurich-Am. court held that "[the insurer's] motions, filed after the court had already awarded summary judgment in favor of the [insured]. Put the [insured] in a defensive posture, and the [insured] there was entitled to recover its attorney's fees." Id. at 611. Thus, the court granted attorneys' fees to the insured only for expenses incurred in defending against the motions that the insurer filed after the insured had been awarded summary judgment. As this unique procedural posture is clearly not present in the instant action, the Court finds that Zurich-Am. is inapplicable here.

Accordingly, except for the narrow modification described above, Suffolk's motion for reconsideration of the December 15, 2012 Order is denied.

## II.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Court's December 15, 2012 Order is modified to state the issue of reliance as follows: "whether and to what extent Suffolk relied on the fraudulent reports generated by CU National and CU National's alleged remittance of principal and interest payments on the stolen loans in continuing to retain CU National"; and it is further

**ORDERED** that Suffolk's motion for reconsideration of the December 15, 2012 Order is otherwise denied.

**SO ORDERED.**
Dated:  Central Islip, New York
August 5, 2013


　　　*/s/ Arthur D. Spatt*　　
ARTHUR D. SPATT
United States District Judge